JOURNAL ENTRY AND OPINION
{¶ 1} Thomas Hall appeals from a judgment of conviction entered after Judge Stuart A. Friedman found him guilty of two counts of aggravated burglary,[1] two counts of aggravated robbery,[2] one count of attempted murder,[3] two counts of felonious assault,[4] three counts of kidnapping,[5] all with one- and three-year firearm specifications,[6] and one count of having a weapon while under a disability.[7] Hall claims he was prejudiced by the State's failure to disclose exculpatory evidence, and that the judge's verdicts were against the manifest weight of the evidence. We affirm the judgment in part, but vacate the sentence and remand for resentencing.
 {¶ 2} Shortly after midnight on the morning of April 15, 2001, two men entered Gayle Pratt's home in the 3000 block of West 103rd Street in Cleveland. The men, who wore ski masks, held Pratt, her three children, her then twelve-year-old nephew, her adult girlfriend, and her girlfriend's infant son at gunpoint while they searched the house for money. The men took $80 in cash and Pratt's handgun, that she had bought for protection after a prior robbery.
 {¶ 3} The men believed that Pratt had more money, and one of them threatened to harm her or her girlfriend if she did not give them more. While being held at gunpoint in an upstairs bedroom, Pratt threw a clock radio out a closed window and yelled for help, and one of the men shot her. She dove out the window onto the roof of her front porch as the man shot her twice more. Once on the porch roof, she managed to lower herself to the ground, where a neighbor assisted her and called 911. She was taken to the hospital and treated for gunshot wounds in her chest, arm, and leg.
The bullet that entered her chest struck her in the right breast, grazed her heart, and struck her left lung before exiting on the left side of her chest.
 {¶ 4} On May 10, 2001, then nineteen-year-old Hall was stopped for a traffic violation and a 9mm Ruger handgun was found in his car. Although the serial number was partially filed off, the legible portion corresponded with the serial number of Pratt's Ruger.
 {¶ 5} Police investigation identified Hall and Terry Anderson as suspects in the robbery, and Pratt was shown a single photo array that included pictures of both men. She identified the Anderson photo as one of her assailants, but she did not identify Hall's. On April 16, 2003, Hall and Anderson were jointly indicted, they each waived jury trial, and a joint bench trial was held. The State did not disclose to Hall that his picture had been in the photo array shown to Pratt, and that she had failed to identify him.
 {¶ 6} At trial, Pratt testified that she could identify both men because the ski masks they wore had unusually large eye and mouth openings, and exposed large portions of each man's face. She also testified that she viewed two separate photo arrays, one for each defendant, and that she had identified both Hall and Anderson from their photos.
 {¶ 7} Pratt stated that both intruders were African-American, and she described one man as shorter, younger, and lighter-skinned, and the other as taller, slimmer, older, and darker-skinned. She testified that the younger man was the primary offender, and that he was the one who had taken her gun from under the mattress, threatened her, and eventually shot her when she yelled for help and then escaped through the window. She stated that the men referred to each other as "T" while communicating during the crime, and she further stated that Anderson, the older man, was recognizable because of acne scars around his eyes.
 {¶ 8} Pratt's nephew, Demetrius Williams, also testified that one of the men was shorter and lighter-skinned, and that the other was taller and darker-skinned. Unlike Pratt, however, he did not state that the ski masks had unusually large holes, and he did not specifically identify Anderson or Hall as his assailants. He did testify, however, that the intruders' complexions matched those of the defendants.
 {¶ 9} Cleveland Police Patrolman Luke Hartman testified that he recovered the 9mm Ruger from Hall's car during a traffic stop on May 10, 2001, and Detective Thomas Lucey testified that forensic tests established that a bullet imbedded in the window frame at Pratt's home had been fired from the Ruger.[8]
Det. John Riedthaler testified that he investigated the crime scene and removed the bullet from the window frame, and that the partial serial number recovered from the Ruger matched the number given to him by Pratt.
He also testified that he questioned Hall about his possession of the gun, and that Hall had told him he received it from a crack addict in a drug transaction.
 {¶ 10} Det. Riedthaler also testified that he showed Pratt only one photo array, which contained photos of both Anderson and Hall, and that she identified only Anderson's photo. Hall then moved for a mistrial because of the State's failure to disclose exculpatory evidence. The judge denied the motion, but stated that he would strike that portion of Pratt's testimony in which she claimed to have identified Hall from a pretrial photo array, as well as her testimony identifying him at trial.
 {¶ 11} The State next presented Charmaine Fleetwood, who testified that she had been Hall's girlfriend between October 2000 and April 2001. She testified that, although she and Hall broke up in April because he assaulted her, she met him on the street sometime in late April, and he admitted to her that he had shot a woman who lived on the west side, and that she had escaped by jumping out a window. Fleetwood admitted that she and Hall had broken up by the time of this encounter, but stated that he continued to contact her in an effort to reunite. She also admitted that her relationship with Hall ended with another violent encounter, which resulted in a felony conviction against him, and that she was unhappy with the sentence he received as a result of that offense. She also admitted that she had spoken with Pratt on the phone prior to the trial.
 {¶ 12} The judge found Hall guilty on all counts and specifications, and he emphasized that he found the evidence supported the conviction independent of Pratt's flawed and stricken identification testimony. He stressed the fact that Hall was found in possession of the Ruger, and found Hall's story concerning his possession of the gun "uncorroborated and * * * self-serving, and ultimately not convincing." Although the judge expressed concern about Fleetwood's motive for testifying, he found it unlikely that Pratt would participate in a scheme to wrongfully convict Hall. Therefore, he concluded that Fleetwood's knowledge of the details of the offense had come from Hall's admission, and found her testimony credible.
 {¶ 13} Hall was sentenced to prison terms of eight years each for the counts of attempted murder, aggravated burglary, aggravated robbery, and kidnapping, concurrent with six-year prison terms for the counts of felonious assault and having a weapon under a disability.[9] He merged the firearm specifications and imposed a single three-year prison term for the firearm specifications, consecutive to the combined eight-year prison term for the predicate offenses.[10] Hall asserts two assignments of error, which are included in an appendix to this opinion.
I. EXCULPATORY EVIDENCE
 {¶ 14} Hall claims the judge erred in failing to grant a mistrial as a remedy for the State's failure to disclose exculpatory evidence. He claims the failure to disclose this material evidence prejudiced him under the rule of Brady v.Maryland,[11] and that he was denied his federal constitutional right to due process when the judge failed to declare a mistrial. But the Brady rule has been held to apply only when evidence is discovered after trial;[12] when evidence is belatedly disclosed during trial, the judge must determine whether a remedy is required under Crim.R. 16(E)(3).[13] Of course, the disclosure of evidence during trial does not negate the defendant's right to due process, because the protections of Crim.R. 16(E)(3) cannot fall below federal constitutional standards,[14] but the analysis should proceed under the rule.[15] If the judge's response to the claimed discovery violation fails to provide constitutional due process, it should also be held to violate Crim.R. 16(E)(3).
 {¶ 15} The judge has discretion to provide appropriate relief for a discovery violation, including granting a continuance, excluding evidence, or making any other order he "deems just under the circumstances."[16] We review a judge's grant or denial of relief under Crim.R. 16(E)(3) for abuse of discretion, subject to the constitutional due process requirements already discussed.[17]
 {¶ 16} When Pratt's failure to identify Hall was disclosed, the judge struck her testimony claiming to have identified Hall prior to trial, and her in-court identification of him. Our review, therefore, is focused on whether he abused his discretion in providing that remedy rather than declaring a mistrial. We pause to note, however, that the arguments at trial have disclosed a discrepancy in Ohio case law that needs to be addressed.
 {¶ 17} In State v. Parson, supra, the Ohio Supreme Court established the standard for providing relief under Crim.R. 16(E)(3) as follows:
"Where, in a criminal trial, the prosecution fails to complywith Crim.R. 16(B)(1)(a)(ii) by informing the accused of an oralstatement made by a co-defendant to a law enforcement officer,and the record does not demonstrate (1) that the prosecution'sfailure to disclose was a willful violation of Crim.R. 16, (2)that foreknowledge of the statement would have benefitted theaccused in the preparation of his defense, or
 (3) that the accused was prejudiced by admission of thestatement, the trial court does not abuse its discretion underCrim.R. 16(E)(3) by permitting such evidence to be admitted."
 {¶ 18} The arguments at trial focused on State v.Joseph,[18] in which the Ohio Supreme Court stated the standard in the conjunctive, rather than the disjunctive. While purporting to follow Parson, the Joseph court stated that:
"Prosecutorial violations of Crim.R. 16 are reversible onlywhen there is a showing that (1) the prosecution's failure todisclose was a willful violation of the rule, (2) foreknowledgeof the information would have benefitted the accused in thepreparation of his defense, and (3) the accused suffered someprejudicial effect."[19]
 {¶ 19} Under the conjunctive standard, the State argued that Hall was entitled to relief only if he could show all three of the factors, including that the violation was willful. As noted, the judge provided a remedy despite Hall's admitted inability to prove the violation willful, but we find it necessary to point out the discrepancy and, in addition, to state that it appears the Joseph standard is mistaken.
 {¶ 20} It does not appear that the Joseph opinion intended to change the standard of Parson, as it cited Parson as supporting, rather than conflicting authority. The other authority cited by the Joseph court, State v.Moore,[20] also states the Crim.R. 16(E)(3) standard in the disjunctive.[21] Prior to Joseph, the Ohio Supreme Court consistently followed Parson's disjunctive standard,[22] and the court has continued to follow theParson standard since Joseph was decided.[23]
Therefore, we do not believe the Joseph court intended to change the Parson standard from a disjunctive test to a conjunctive test without any discussion, and we believe the disjunctive standard continues in effect.
 {¶ 21} Moreover, it is unlikely that a conjunctive standard would satisfy the constitutional concerns outlined in Brady,
supra, because due process questions concerning suppressed evidence are decided "irrespective of the good faith or bad faith of the prosecution."[24] It would make no sense to require a defendant to show intentional misconduct in order to obtain relief during trial, when suppressed evidence discovered after trial is not subject to such a standard. As in Brady, due process requires that the Crim.R. 16(E)(3) standard provide the relief necessary to ensure fairness,[25] regardless of whether the discovery violation was intentional. Therefore, we believe the judge properly determined that a discovery violation occurred, despite the fact that Hall could not show the violation was intentional. Litigants and judges in future cases should approach Joseph, and other cases citing a conjunctive Parson
standard, with caution.
 {¶ 22} Although the judge found a discovery violation, he determined that it was sufficient to only exclude Pratt's identification evidence rather than declare a mistrial. Hall claims this remedy failed to provide appropriate relief, because he was denied the opportunity to cross-examine Pratt with the knowledge that she had failed to identify him. We find that the judge did not abuse his discretion in failing to declare a mistrial.
 {¶ 23} When a case is tried to a judge instead of a jury, we presume that the judge considered only admissible evidence unless the record indicates otherwise.[26] Although the remedy of exclusion might have been insufficient to overcome the evidence's prejudicial effect in a jury trial, the judge specifically stated that he would not consider Pratt's identification testimony, and the record does not show otherwise. He based his findings of guilt on Hall's possession of the gun that shot Pratt, his unconvincing explanation of how he obtained the gun, and Fleetwood's testimony concerning Hall's admission of the crime.
 {¶ 24} Hall claims that the untimely disclosure further prejudiced him because he was unable to fully cross-examine Pratt.
He argues that Pratt's identification of him was critical to the case, and that foreknowledge of her failure to identify him would have allowed him to discredit her testimony. But this argument implies that the ability to cross-examine Pratt would have allowed him to discredit her testimony further than it already had been; Det. Riedthaler's testimony and the photo array exhibit served this purpose effectively, and Hall has not shown how further cross-examination would have helped him.
 {¶ 25} He argues that Pratt's testimony showed not only her failure to identify him, but her lack of credibility generally, and he claims the judge's remedy had the effect of excluding the identification testimony while leaving her remaining testimony intact, without any taint from her claim that she had identified him. As noted, however, the judge's verdict primarily relied on Hall's possession of the gun and Fleetwood's testimony concerning his admission, rather than on any testimony of Pratt. Therefore, the judge's remedy for the discovery violation does not appear inadequate. The second assignment is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 26} Hall claims the judge's verdict is against the manifest weight of the evidence. He claims that both Pratt and Fleetwood lacked credibility, and that he plausibly explained his possession of the gun. We review a manifest weight challenge to determine whether the evidence presented was believable and capable of supporting the inferences necessary to the finding of guilt.[27] Manifest weight review allows the reviewing court to act as a thirteenth juror, and to remand for a new trial if it appears that the finder of fact misconstrued the evidence, drew unreasonable inferences, or otherwise "lost its way" in rendering its verdict.[28]
Under the manifest weight test, a new trial should not be ordered unless the evidence weighs so heavily against conviction that the verdict appears unjust. If the evidence so lacks credibility or the inferences drawn appear so unreasonable that the verdict appears unjust, the case must be remanded for a new trial.[29]
 {¶ 27} We agree that Pratt's claim that she had identified Hall in a pretrial photo array cast doubt on the credibility of her testimony generally, and not simply her in-court identification of Hall. Her testimony that the intruders referred to each other as "T" during the robbery was contrary to the testimony of her nephew, who claimed that the men did not speak to each other during the robbery. Williams also testified that the men's masks allowed him to see around their eyes and mouths, but he did not testify, as Pratt did, that the openings were unusually large.
 {¶ 28} As already noted, the judge did not rely on Pratt's testimony in finding Hall guilty. Instead, he focused on Hall's possession of the gun after the crime, his "unconvincing" explanation of how he obtained the gun, and Fleetwood's testimony concerning his admission of guilt. Therefore, Pratt's lack of credibility does not show that the verdict was against the manifest weight of the evidence.
 {¶ 29} Hall also challenges the credibility of Fleetwood's testimony, because she admitted that she was unhappy with the length of his prison term for an aggravated robbery offense in which she was the victim. He also claimed that her testimony should not be believed because it was unlikely that he would have made such an admission to her at the time she claimed. Fleetwood testified that, after the couple had broken up, he told her about the robbery and shooting. She asserted that Hall was still attempting to rekindle the relationship at that time, and that the aggravated robbery offense against her did not occur until after his admission.
 {¶ 30} Despite her admitted bias, as well as her testimony that she had spoken to Pratt prior to trial, the judge found her testimony believable. Fleetwood accurately testified to details of the incident, and the judge stated that he believed she learned those details from Hall, because he did not believe Pratt would deliberately assist Fleetwood in an attempt to wrongfully convict Hall. We recognize, as did the judge, that this is a close question, especially considering Pratt's lack of credibility in her own testimony. Nevertheless, we are not convinced that the judge's decision to believe Fleetwood's testimony was manifestly unreasonable or unjust.
 {¶ 31} Her testimony, coupled with Hall's possession of Pratt's gun, provided substantial support for the guilty verdict regardless of, and despite, Pratt's testimony. Therefore, the first assignment of error is overruled.
 SENTENCING ERROR {¶ 32} Although Hall has not challenged his sentence, we note, sua sponte, that the judge imposed the sentence in this case consecutive to a sentence previously imposed on him in Case No. CR-409107. The judge failed, however, to state any findings or reasons for imposing the sentences consecutively. We find this omission plain error that we can recognize on appeal[30]
and, therefore, we vacate the sentence and remand for resentencing.
 {¶ 33} Under R.C. 2929.41(A), a prison term is served concurrent to a term imposed in a separate case unless the judge orders consecutive sentences in compliance with R.C. 2929.14. Appellate courts have consistently recognized that judges must comply with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) whenever consecutive sentences are imposed, even when the sentences are imposed in separate cases.[31] Therefore, the judge plainly erred in imposing consecutive sentences without first stating his findings and reasons for doing so.
 {¶ 34} The judgment is affirmed in part, but the sentence is vacated and remanded for resentencing.
 APPENDIX — ASSIGNMENTS OF ERROR I. THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE.
 II. THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL WHEN THESTATE FAILED TO DISCLOSE EXCULPATORY EVIDENCE PRIOR TO TRIAL.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds that there were reasonable ground for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., Concurs.
 Cooney, J., Concurs in part and dissents in part (see separateopinion attached).
[1] R.C. 2911.11.
[2] R.C. 2911.01.
[3] R.C. 2903.02, 2923.02.
[4] R.C. 2903.11.
[5] R.C. 2905.01.
[6] R.C. 2941.141, 2941.145.
[7] R.C. 2923.13.
[8] All three of Pratt's gunshot wounds had both entrance and exit wounds and, therefore, no bullets were recovered from her body.
[9] It appears the judge intended to impose a six-month sentence for having a weapon under a disability, but the journal entry purports to impose a six-year sentence.
[10] Because the judge imposed the sentences concurrently, he did not analyze whether any of the offenses were allied under R.C. 2941.25.
[11] (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215.
[12] State v. Wickline (1990), 50 Ohio St.3d 114, 116,552 N.E.2d 913, citing United States v. Agurs (1976), 427 U.S. 97,103, 96 S.Ct. 2392, 49 L.Ed.2d 342.
[13] Wickline.
[14] State v. Brown, 99 Ohio St.3d 323, 2003-Ohio-3931,792 N.E.2d 175, at ¶ 21.
[15] Wickline, 50 Ohio St.3d at 116.
[16] Crim.R. 16(E)(3).
[17] State v. Parson (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 453 N.E.2d 689.
[18] 73 Ohio St.3d 450, 1995-Ohio-288, 653 N.E.2d 285.
[19] (Emphasis added.) Id. at 458.
[20] (1988), 40 Ohio St.3d 63, 531 N.E.2d 691.
[21] Id. at 66.
[22] Moore; State v. Wiles (1990), 59 Ohio St.3d 71, 79,571 N.E.2d 97; State v. Scudder, 71 Ohio St.3d 263, 269,1994-Ohio-298, 643 N.E.2d 524; State v. Bidinost,71 Ohio St.3d 449, 456, 1994-Ohio-465, 644 N.E.2d 318; see, also, State v.Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026, syllabus (stating the test for admissibility in the conjunctive, which suggests that a defendant need only satisfy one prong of the test to exclude undisclosed evidence).
[23] State v. Otte, 74 Ohio St.3d 555, 563, 1996-Ohio-108,660 N.E.2d 711.
[24] Brady, 373 U.S. at 87.
[25] See Wickline, supra, 50 Ohio St.3d at 116 (judges are authorized to order remedies under Crim.R. 16(E)(3) to ensure a fair trial).
[26] State v. Fautenberry, 72 Ohio St.3d 435, 439,1995-Ohio-209, 650 N.E.2d 878.
[27] State v. Lindsey, 87 Ohio St.3d 479, 483, 2000-Ohio-465,721 N.E.2d 995.
[28] Id. (citation omitted).
[29] Id.
[30] State v. Brown, Cuyahoga App. No. 80725, 2002-Ohio-5468, at ¶ 23.
[31] State v. Givens, Cuyahoga App. No. 80319, 2002-Ohio-4904, at ¶ 8; State v. Wallace, Delaware App. No. 03-CA-A-07-043, 2004-Ohio-1694, at ¶ 25; State v. Gillman,
Franklin App. No. 01AP-662, 2001-Ohio-3968.
 CONCURRING AND DISSENTING OPINION