OPINION
{¶ 1} This is an appeal by defendant-appellant, Hasel G. Copley, from a judgment of the Franklin County Court of Common Pleas following a bench trial in which the court found appellant guilty of rape and gross sexual imposition.
 {¶ 2} On February 13, 2004, appellant was indicted on one count of rape, in violation of R.C. 2907.02, and two counts of gross sexual imposition, in violation of R.C. 2907.05. The indictment charged that the alleged victim, H.M., was less than 13 years of age.
 {¶ 3} Appellant waived his right to a jury trial, and case was tried before a judge beginning on August 9, 2004. The state's first witness was K.M., the grandmother of H.M. Approximately three years ago, K.M. began a dating relationship with appellant, and they subsequently became engaged.
 {¶ 4} On February 1, 2004, K.M. resided in Whitehall, Ohio. On that date, K.M.'s grandchildren, [child 1], age three, [child 2], age two, and the alleged victim, H.M., age three, were staying overnight at K.M.'s residence.
 {¶ 5} During the evening, K.M. and her grandchildren watched movies together. K.M. subsequently put the girls to bed, while appellant was in the living room with H.M. Later, K.M. went to the bathroom and observed "[H.M.] * * * lying on the couch and [appellant] was sitting up but bent over like he had his face — was facing the back of the couch. And his head was down real close to little [H.M.'s] belly." (Tr. at 14.) When asked whether she observed appellant performing oral sex on H.M., K.M. responded, "I can't be certain that I did, no. Because it was dark and I was very sleepy." (Tr. at 14.) K.M. then went to the bathroom, and, when she returned, appellant was sitting on the couch beside H.M.; K.M. observed that H.M. was not wearing his diaper.
 {¶ 6} The following day, K.M. went to the Whitehall Police Department and spoke with officers, including Whitehall Police Officer Sherry Laverack. K.M. told Officer Laverack that she wanted to report an incident involving her live-in boyfriend and her grandson.
 {¶ 7} At that time, K.M. made a written statement in which she related observing appellant performing oral sex on her three-year-old grandson. She also indicated that, when she came out of the bathroom, appellant was holding her grandson's penis "and getting ready to take his out." (Tr. at 18.) Appellant looked up and saw K.M. She then went into the kitchen, and, when she returned to the living room, appellant "said something about he was going to masturbate, or little [H.M.] asked him or something." (Tr. at 19.) K.M. then took H.M. to bed. In her statement, K.M. related that H.M.'s genital area was red. K.M. spoke with H.M. about the incident and, based upon that conversation, she decided to go to the Whitehall Police Department.
 {¶ 8} After speaking with K.M., Officer Laverack prepared a written report and forwarded it to the detective bureau. Whitehall Police Detective Joseph Huntzinger conducted a non-custodial interview with appellant, who agreed to come to the station on his own accord. The interview was taped and, at trial, the audiotapes were admitted into evidence. During the interview, appellant admitted performing fellatio on H.M.; he also stated that he put H.M.'s hand on his (H.M.'s) penis during the incident.
 {¶ 9} At trial, K.M. acknowledged she was still engaged to appellant, and that she had indicated to the prosecution her desire for appellant not go to jail, but to receive help instead. She also admitted that she saw appellant with his hand going toward H.M.'s penis, and that appellant mentioned H.M. had a "boner." (Tr. at 20.) Appellant later apologized to her for his actions. (Tr. at 20.)
 {¶ 10} During its case-in-chief, the state introduced a letter K.M. found on her coffee table the day she returned from the Whitehall Police Department. The letter, identified as state's Exhibit No. 2, stated in part:
[K.M.], I don't hate you for doing this. I hate myself for what I've done. I was drunk that night and he walked in on me while I was masturbating. I didn't even see him until he sat on the couch. He took off his own dipper [sic] and I showed him how to do it (masturbate). I don't know why I did the other thing. I just wish you would had [sic] confronted me with this before doing what you did. We could have done this a different way, I would have taken councelling [sic]. I would have left on my own. Now I'm going to prison for a while if I make it through prison. I still love you very much and hope you'll keep in contact with me. I need a friend. I guess I'll live with * * * until I go. Please don't tell them what happened, Please. I'm just going to say we had a fight and you kicked me out. Don't worry, I'll never come in your house again. I was hungry and needed smokes. I'll call to get a few of my thing[s]. You can have the rest I wont' be needing it. Take care[.] I love you[,] Hasel
 {¶ 11} C.M. is the mother of H.M. Several days after the alleged incident, on February 5, 2004, H.M. told his mother he was scared because appellant "touched my wiener * * * because he likes to." (Tr. at 101.) C.M. then spoke with K.M., who verified what H.M. had stated. As a result, C.M. took her son to Children's Hospital for an examination.
 {¶ 12} Following the presentation of evidence, the trial court found appellant guilty of one count of rape and one count of gross sexual imposition. The court dismissed the remaining count of gross sexual imposition. The trial court sentenced appellant by entry filed on August 23, 2004.
 {¶ 13} On appeal, appellant sets forth the following five assignments of error for review:
ASSIGNMENT OF ERROR I
Appellant's convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, thereby violating Appellant's due process rights, under Section10, Article I of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution.
ASSIGNMENT OF ERROR II
The trial court commits reversible error by permitting the state to present inadmissible hearsay evidence and/or improperly impeach its own witness, in violation of Appellant's right to a fair trial under the state and federal constitutions.
ASSIGNMENT OF ERROR III
The trial court committed reversible error when it failed to suppress any statements made by Appellant as they were the result of coercion by the police.
ASSIGNMENT OF ERROR IV
Appellant was denied effective assistance of trial counsel.
ASSIGNMENT OF ERROR V
The trial court committed reversible error when it labeled Appellant a sexual predator when there was insufficient evidence to prove by a clear and convincing evidence that Appellant met the criteria for said label.
 {¶ 14} Under his first assignment of error, appellant challenges both the sufficiency and weight of the evidence upon which his convictions were based. Regarding the issue of sufficiency, appellant argues that a confession by itself is not sufficient evidence to support a conviction; rather, there must also be proof of the corpus delicti of the crime. Appellant contends that the prosecution's primary witness, K.M., testified she did not see appellant perform fellatio on the child, and, therefore, appellant's statements to Detective Huntzinger were insufficient to establish that appellant committed the charged act of rape. Regarding the issue of manifest weight, appellant asserts the trier of fact lost its way in convicting him due to the emotional nature of the case and the admission of inadmissible evidence.
 {¶ 15} We initially note that sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v.Stone, Hamilton App. No. C-040817, 2006-Ohio-1375, at ¶ 10. InState v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617, at ¶ 30-31, this court discussed those distinctions as follows:
To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
 {¶ 16} In the present case, appellant was convicted of rape and gross sexual imposition. R.C. 2907.02(A)(1)(b), which defines the offense of rape, provides in part: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." The offense of gross sexual imposition, as defined under R.C. 2907.05(A)(4), provides that: "No person shall have sexual contact with another, not the spouse of the offender[,] * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 17} As noted, appellant's primary contention in challenging the sufficiency of the evidence is that the state failed to offer proof of the corpus delicti of the crime. InState v. Sturgill, Clermont App. No. CA2004-02-008,2004-Ohio-6481, at ¶ 7-10, the court discussed the corpus delicti rule, stating in relevant part:
Before the state may introduce any alleged confession, the state must provide some evidence that a crime has occurred independent of the confession. This rule was articulated inState v. Maranda (1916), 94 Ohio St. 364, * * * paragraphs 1 and 2 of the syllabus, as follows:
"1. By the corpus delicti of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. [and] 2. The criminal agency of the act.
"2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." (Emphasis sic).
The burden upon the state to prove some evidence of the corpus delicti is minimal. State v. Van Hook (1988),39 Ohio St.3d 256, 261-262 * * *. In fact, the state need not provide direct and positive proof that a crime was committed. The state may rely upon circumstantial evidence in proving the corpus delicti. * * *
 {¶ 18} Appellant's contention that the state failed to introduce sufficient evidence of the corpus delicti of the crime is unpersuasive. Rather, upon review, we conclude there was some evidence, independent of the confession, tending to prove the material elements of the charged crimes. Regarding the confession itself, during the interview with Detective Huntzinger, appellant stated he was on the couch masturbating when H.M. walked into the room. H.M. was not wearing his diaper, and appellant acknowledged performing fellatio on the child for "maybe" a minute or less. Appellant also put H.M.'s hand on his own (H.M.'s) penis during the incident.
 {¶ 19} As a preliminary matter, it is undisputed that H.M. was under 13 years of age and not the spouse of appellant. Further, we agree with the state's contention that K.M.'s testimony indicating she was uncertain as to whether appellant was performing fellatio is not dispositive. Although K.M. tempered her earlier statements made to the police, K.M.'s trial testimony provided some evidence of the corpus delicti. Specifically, K.M. testified that, when she came downstairs to use the restroom, she observed H.M. lying on the couch and appellant was sitting up, "but bent over," and appellant's head "was down real close to little [H.M.'s] belly." (Tr. at 14.) K.M. acknowledged during her testimony that appellant's hand was going toward H.M.'s penis, and that appellant mentioned H.M. had a "boner." K.M. corroborated appellant's admission that the child did not have a diaper on at the time. The trier of fact was entitled to draw reasonable inferences from such testimony.
 {¶ 20} In addition to the above testimony, the court had before it the letter appellant left at K.M.'s house, in which he stated that the child walked in on him while he was masturbating, and further stated he did not know "why I did the other thing." Again, the trier of fact was entitled to draw its own inferences from that evidence. See Sturgill, at ¶ 14 (defendant's statement that he had done "something bad" to child, combined with fact victim was discovered nude, provided some evidence, outside of defendant's later confession, that crime occurred, and was sufficient evidence of corpus delicti of crime of rape).
 {¶ 21} Finally, the state presented evidence that H.M.'s mother, as a result of H.M.'s statements to her, contacted the police and took her son to Children's Hospital for a medical examination. This also constituted some evidence of the corpus delicti of the crimes.[1] State v. Edinger, Franklin App. No. 05AP-31, 2006-Ohio-1527, at ¶ 32 (evidence held sufficient to satisfy corpus delicti of crime of rape where three-year-old victim, living with defendant during relevant time, made comments to father prompting father and mother to call police, resulting in subsequent medical examination).
 {¶ 22} Accordingly, in viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt, and we therefore reject appellant's contention that his convictions are not supported by sufficient evidence.
 {¶ 23} Regarding appellant's manifest weight challenge, this court has reviewed the entire record and we conclude that the trial court, sitting as trier of fact and determining the credibility of witnesses and resolving conflicts in the evidence, did not lose its way and create a manifest miscarriage of justice so as to require a new trial. Sexton. Further, for reasons discussed infra, we find no merit to appellant's contention that the trial court rendered a conviction based upon a consideration of inadmissible evidence in the form of K.M.'s statements to police officers. Accordingly, appellant's manifest weight argument is not well-taken.
 {¶ 24} Based upon the foregoing, appellant's first assignment of error is overruled.
 {¶ 25} Under his second assignment of error, appellant argues that the trial court erred in allowing the state to present inadmissible hearsay evidence and in allowing the state to impeach its own witness. More specifically, appellant asserts that K.M. informed the prosecution, prior to trial, she was not going to testify that she saw appellant rape H.M., and, thus, the state was not surprised by her testimony at trial. Appellant argues that the trial court permitted the state, over objection, to cross-examine K.M. with her prior statement to the police, and that those statements constituted hearsay. Appellant further asserts that the trial court erred in permitting the state to attempt to impeach its own witness absent a showing of surprise and affirmative damage, in violation of Evid.R. 607.
 {¶ 26} As noted by the state, however, the trial court sustained defense counsel's objection to that portion of K.M.'s written statement to police officers in which she admitted seeing appellant perform fellatio on H.M. The record reflects that the trial court addressed the issue of K.M.'s testimony as follows:
I would first like to address the issue of [K.M.'s] testimony. I am taking her testimony at face value today. I am not considering for purposes of the findings in this case her prior statement to the police. I am considering only what she testified that she saw today in this case.
(Tr. at 146.)
 {¶ 27} Under Ohio law, "the usual presumption is that in a bench trial in a criminal case the trial court considers only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." Statev. Klempa, Belmont App. No. 01 BA 63, 2003-Ohio-3482, at ¶ 15, citing State v. Post (1987), 32 Ohio St.3d 380, 384. In the instant case, appellant has not shown that the trial court considered the prior statement in determining the issues in this case. Rather, even assuming that the testimony may have been improper in a jury trial, appellant has not rebutted the presumption that the trial judge, sitting as trier of fact, understood the applicable rules and did not consider improper evidence. See Klempa, at ¶ 16 (even if evidence was inadmissible, trial court indicated on record it did not consider evidence defendant complains of, and, thus, record does not affirmatively demonstrate court considered such evidence); Statev. Hall, Cuyahoga App. No. 83361, 2004-Ohio-5963, at ¶ 23 (although remedy of exclusion might have been insufficient to overcome evidence's prejudicial effect in jury trial, judge specifically stated he would not consider identification testimony, and record does not show otherwise).
 {¶ 28} Appellant's second assignment of error is without merit and is overruled.
 {¶ 29} Under his third assignment of error, appellant argues that statements he made to Detective Huntzinger were not voluntary, and that the trial court erred by failing to suppress those statements. Appellant contends that the detective threatened to arrest him if he did not tell the truth, while also promising him freedom if he cooperated. Appellant maintains that the detective's use of both threats and promises rendered his statements involuntary. Finally, appellant acknowledges that his trial counsel failed to object to the admission of his confession to the detective, and, therefore, this court's standard of review is plain error.
 {¶ 30} At the outset, the record indicates that appellant was not in custody at the time of the interview, and, thus, the detective was not required to advise him of his Miranda rights.State v. Isaac, Greene App. No. 2003-CA-91, 2004-Ohio-4683, at ¶ 22. In general, "[a] defendant's confession `is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.'" State v. Meeds, Miami App. No. 2003 CA 5, 2004-Ohio-3577, at ¶ 12. In determining whether or not a confession was voluntary, "`the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" Id., quoting State v. Edwards (1976),49 Ohio St.2d 31, 40-41.
 {¶ 31} In considering the totality of the circumstances in the instant case, the record does not suggest that appellant's age or mentality precluded him from making a voluntary confession. Further, the record of the sentencing hearing indicates that appellant had prior criminal experience. Specifically, the prosecutor indicated that appellant's prior record consisted of "a misdemeanor receiving stolen property, * * * attempted drug possession * * *, a felony four theft, felony two burglary, and a felony five breaking and entering." (Tr. at 160.)
 {¶ 32} This court has reviewed the interview tape, and we note that the interview was not lengthy nor was it intense, and we agree with the state's representation that the detective spoke in a conversational tone throughout the interview. There is also no evidence as to physical deprivation or mistreatment. Nor does our review of the interview lead us to conclude that the detective made improper threats or that any admonition that appellant be truthful rendered the confession involuntary. Moreover, admonitions to tell the truth are considered neither threats nor promises, and "`assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession.'" Meeds, at ¶ 16, quoting State v. Stringham, Miami App. No. 2002-CA-9, 2003-Ohio-1100, at ¶ 16. Here, the totality of the circumstances fails to support appellant's contention that his statements were involuntary.
 {¶ 33} Accordingly, finding no plain error, appellant's third assignment of error is without merit and is overruled.
 {¶ 34} We will address appellant's fourth and fifth assignments of error in inverse order. Under his fifth assignment of error, appellant contends the trial court erred in labeling him a sexual predator because there was a lack of clear and convincing evidence to support such a classification.
 {¶ 35} In order to earn the designation of "sexual predator," a defendant "must have been convicted of or pled guilty to committing a sexually oriented offense and must be `likely to engage in the future in one or more sexually oriented offenses.'"State v. Eppinger (2001), 91 Ohio St.3d 158, 161, quoting R.C.2950.01(E). R.C. 2950.09(B)(1) provides for sexual offender classification hearings and, at such hearings, the state must present "clear and convincing evidence" upon which the trial court can determine that an offender is a sexual predator. Id. at 163.
 {¶ 36} Pursuant to R.C. 2950.09(B)(3), the following factors are to be considered in making such a determination:
(a) The offender's * * * age;
(b) The offender's * * * prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
(f) If the offender * * * previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender * * * completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender * * *;
(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
(i) Whether the offender * * *, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct.
 {¶ 37} In considering the above statutory factors, "[n]o requisite number of these factors must apply before an offender is found to be a sexual predator and the trial court may place as much or as little weight on any of the factors as it deems to be relevant; the test is not a balancing one." State v. McDonald,
Franklin App. No. 03AP-853, 2004-Ohio-2571, at ¶ 8. Thus, "[e]ven one or two factors are sufficient as long as the evidence of likely recidivism is clear and convincing." Id.
 {¶ 38} In the present case, appellant was 36 years of age at the time of the incident. Although he did not have a record of prior sexual offenses, appellant had a somewhat extensive prior criminal record (burglary, receiving stolen property, theft, possession of drugs, and breaking and entering). The victim in this case was three years of age and, as previously noted, the victim's grandmother and appellant were engaged; thus, appellant occupied a position of trust and authority by virtue of that relationship. See State v. Carter (Aug. 9, 2001), Franklin App. No. 00AP-1365 ("[a]ppellant's taking advantage of his position of trust is another factor in support of the sexual predator finding").
 {¶ 39} The trial court, in finding evidence that appellant was likely to re-offend, expressed concern that appellant attempted to minimize his actions by his statements during the interview with police that the child, age three, somehow invited the conduct by taking off his own diaper and climbing onto the couch. Courts have considered a defendant's reluctance to accept blame in considering the likelihood of recidivism. See State v.Lent, Washington App. No. 04CA38, 2005-Ohio-4757, at ¶ 35 (appellant's assertion that young victim initiated contact by being a "very inquisitive child" indicated likelihood to recidivate); State v. Keerps, Washington App. No. 02CA2, 2002-Ohio-4806, at ¶ 15 (defendant's attempt to shift blame for this offense to his consumption of alcohol, instead of accepting responsibility himself, evidence from which trial court could conclude he is likely to commit another sexually oriented offense).
 {¶ 40} Regarding the age of the victim and the nature of the offense, the trial court in this case found that "fellatio on a three year old child, followed by masturbation of that child, indicates to me that, given similar circumstances, the defendant would re-offend and would re-commit or would commit a sexually oriented offense in the future, specifically against children." (Tr. at 159.) The trial court also concluded that the harm caused by appellant was "heinous." (Tr. at 163.) It has been held that a victim's age "is probative because it serves as a telling indicator of the depths of [the] offender's inability to refrain from such illegal conduct." State v. Jones (July 23, 2001), Stark App. No. 2000CA00350. See, also, Keerps, at ¶ 13 (noting that the Ohio Supreme Court has "accepted the proposition that child molesters are more likely to commit other sexually oriented offenses when it cited a study that revealed recidivism is as high as 72% among child molesters").
 {¶ 41} The record in the instant case reflects that the trial court considered the relevant statutory provisions, and discussed the evidence and factors it relied upon in making its determination that appellant was likely to re-offend, and, therefore, should be classified a sexual predator. Upon review, we find that there was sufficient evidence to support the trial court's sexual predator adjudication.
 {¶ 42} Accordingly, appellant's fifth assignment of error is without merit and is overruled.
 {¶ 43} Under his fourth assignment of error, appellant contends he was denied effective assistance of counsel. More specifically, appellant argues that his counsel was ineffective in: (1) failing to object to the admission of his statements to Detective Huntzinger; (2) failing to object to the admission of the letter he allegedly wrote to K.M.; (3) failing to object to the state's impeachment of K.M.; and (4) stipulating to the facts presented by the state during the sexual offender classification hearing.
 {¶ 44} In State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, the Ohio Supreme Court discussed the applicable standard in considering a claim of ineffective assistance of counsel, stating as follows:
2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391 * * *; Strickland v. Washington
[1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 45} Appellant first argues that his counsel was ineffective in not challenging the statements he made to Detective Huntzinger on the basis that those statements were not given voluntarily. However, in addressing appellant's third assignment of error, this court reviewed the voluntariness of appellant's confession and found no error in its admission. Because we have rejected appellant's contention that his confession was involuntary, appellant cannot show prejudice resulting from his counsel's failure to file a motion to suppress the statements at issue. Accordingly, appellant's claim of ineffective assistance on this issue is unpersuasive.
 {¶ 46} Further, as noted by the state, rather than seeking to challenge the voluntariness of the confession, the record indicates that appellant's counsel sought to raise doubt as to the reliability of that confession. During closing argument, the trial court questioned counsel on this point. Specifically, the court, while finding "there is no issue concerning involuntariness here," noted that "the nature of the questioning was such that it may have elicited an untrue response," and the court inquired of counsel, "is that what you're arguing?" (Tr. at 138.) Appellant's counsel concurred, and the court credited appellant's counsel with making a "sophisticated and unique argument questioning the truth of those statements based upon actions of the detective in this case[,] [a]nd that, in effect, perhaps the defendant was telling the detective what he wanted to hear without arguing that the statements were in any way coerced." (Tr. at 147.) Here, counsel's tactical decision to challenge the reliability of the confession, as opposed to its admissibility, was a matter of trial strategy, and we are unable to conclude that counsel's strategy was unreasonable, especially in light of the voluntary nature of the confession.
 {¶ 47} Regarding defense counsel's failure to challenge the admission of the letter left on K.M.'s table, appellant cannot show that his counsel would have been successful in bringing such a challenge. Under Evid.R. 901(B)(2), the authenticity of a document may be established by means of a non-expert opinion on handwriting. Weissenberger's Ohio Evidence Courtroom Manual (2006), 411. Under this technique, a person familiar with an individual's handwriting can provide the foundational testimony that, based on his or her knowledge, the document was written by the individual in question. Id.
 {¶ 48} In the instant case, K.M. testified that she recognized appellant's handwriting, and that the letter at issue was written and signed by him. The record indicates that K.M. was familiar with appellant, having been involved in a dating relationship with him for the past three years (leading to their engagement). Based upon the record presented, there was sufficient evidence of authenticity to support the trial court's admission of the letter into evidence, and, therefore, counsel will not be deemed ineffective for failing to make a meritless objection. State v. Shahan, Washington App. No. 02CA63,2003-Ohio-6945, at ¶ 38 ("trial counsel is not required to make futile or meritless objections").
 {¶ 49} To the extent appellant claims ineffective assistance of counsel based upon K.M.'s statement to the police that she saw appellant perform fellatio, appellant has not shown prejudice. Rather, as previously addressed, the trial court specifically indicated on the record that it did not consider her statement to the police.
 {¶ 50} Finally, we find no merit to appellant's contention that his counsel was ineffective in stipulating to the state's statement of facts at the sexual predator hearing. At the hearing, the state recited the following facts: (1) appellant was age 36 at the time of the offense; (2) appellant had a prior criminal record involving burglary, receiving stolen property, theft, possession of drugs and breaking and entering; (3) the victim was three years of age, and the grandson of appellant's girlfriend; (4) the incident involved a single victim; (5) there were no drugs or alcohol administered to the victim; (6) appellant had no prior sex offenses; (7) there was no diagnosis of mental illness of the offender; (8) appellant indicated he was "drunk and horny" at the time of the incident; (9) it apparently was a "one-time incident with the victim"; (10) there was "no cruelty beyond the act itself"; and (11) appellant attempted to minimize his actions by stating that the victim took off his own diaper and crawled on the couch.
 {¶ 51} As noted by the state, appellant does not argue that the trial court would have excluded any of those facts had defense counsel not entered into the stipulation, nor would such an argument have merit in this case. Rather, the facts related by the prosecutor were matters of record (or readily ascertainable facts), and we do not find that counsel's strategy to stipulate to those facts was unreasonable.
 {¶ 52} Appellant's fourth assignment of error is without merit and is overruled.
 {¶ 53} Based upon the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.
[1] In his reply brief, appellant challenges the statements H.M. made to his mother (which the trial court allowed, not for the truth of the matter asserted, but to "explain actions") as in contravention of Crawford v. Washington (2004), 541 U.S. 36
(holding that testimonial out-of-court statements are inadmissible unless declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant). We do not, however, find the unsolicited statements of a three-year-old child to his mother in the present case to be testimonial in nature, i.e., made with the realization that they would be used in the prosecution of a criminal trial. See In re D.L.,
Cuyahoga App. No. 84643, 2005-Ohio-2320 (three-year-old victim's statements to pediatric nurse practitioner during sexual assault examination not testimonial in nature).