OPINION
{¶ 1} Defendant-appellant, Jason Rippey ("defendant"), appeals from a judgment of the Franklin County Court of Common Pleas convicting him of the murder of Clark Neff. Defendant advances the following assignment of error:
The trial court erred when it entered judgment against the appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 2} Defendant was charged with one count of murder, and one count of having a weapon while under disability ("WUD"). Defendant waived his right to a jury trial as to the WUD charge. A jury trial was held and the jury returned a verdict of guilty as to the murder charge. Thereafter, the court found the defendant guilty of the WUD charge.
 {¶ 3} The charges in this case arise out of the shooting death of Clark Neff ("Neff"), which occurred on August 18, 2000. At the time of the incident, Neff was residing at 2480 Daily Road in Columbus, Ohio, with Jeff Colbridge. After stopping for a few drinks after work, Neff arrived home and was upset about the parking situation at the residence. Apparently someone had parked in his spot, so Neff went into the house and told those inside of the situation. Thereafter, Neff and Kenny Yates, a friend of the Colbridge's went outside so that Yates could move his vehicle and Neff could park his.
 {¶ 4} At this time, Anthony Davis, a neighbor of Colbridge was standing in the street talking to the defendant who was in a white sport utility vehicle ("SUV") with his girlfriend Stacey Winston. Also present at that time in a separate vehicle was Shirley Frasier and her friend Larry Williams. Frasier and Williams had met up with defendant and Winston earlier in the evening because Frasier and Williams had agreed to rent a motel room for defendant because he was not old enough to do so. They traveled in separate vehicles to Daily Road because defendant said he had to make a stop on the way to the motel. The stop that defendant had to make was to meet with Davis so that, according to Davis, he could obtain drugs from defendant.
 {¶ 5} After Kenny Yates moved his vehicle, he went back into the Colbridge residence. Neff, apparently upset about the persons conducting business in the street, starting yelling at the defendant. According to the witnesses, defendant got out of his vehicle, and continued arguing with Neff. Gunshots were heard and appellant then returned to his vehicle and left the scene.
 {¶ 6} Kenny Yates testified that while moving his vehicle he noticed a white SUV across the street and an older Buick parked in front of the Colbridge residence. After returning to the house, Yates heard two shots and then Neff staggered into the Colbridge house, stating, "They shot me." (Tr. Vol. III, Pg. 289.) Neff also stated, "All I told them" — "told them was to take their shit down the road." (Tr. Vol. II, Pg.116.)
 {¶ 7} Anthony Davis testified that after obtaining drugs from defendant, Davis went to the Colbridge residence, heard some noise outside followed by two gunshots. Davis then saw Neff enter the Colbridge residence bleeding, at which time the Colbridge's told Davis to leave.
 {¶ 8} Stacey Winston drove with defendant to Daily Road and was smoking marijuana in the car, while all of this was occurring. She testified that she was not paying close attention to what was going on at the time, but that defendant got into an argument with a white male, and defendant got out of the car to continue the argument. According to Winston, she heard two shots, defendant got back into the vehicle and the two drove off in silence to the motel.
 {¶ 9} Shirley Frasier was in the vehicle parked in the vicinity of defendant. She testified upon hearing the argument, she exited her vehicle, and saw defendant point a gun in the direction of Neff. She heard two shots, and then saw defendant enter his vehicle and drive away. Larry Williams, who was in the same vehicle as Frasier testified that while he heard gunfire and saw defendant outside of his vehicle, Williams did not see the shooting occur, nor did he see the defendant with a gun.
 {¶ 10} Officer Bodell lived four houses away from 2480 Daily Road. He testified that he heard people arguing and went to look outside his bedroom window to investigate. He testified that he saw three to four people, possibly male, arguing about four houses away. He saw a muzzle flash and heard shots. He saw people running and then he saw one person get into a white SUV or van on the passenger side and another on the driver's side. The vehicle then sped away with its lights off. At this time he instructed his wife to call 911. Even though he told the dispatcher that he observed male blacks arguing outside at the time of the shooting, he changed his statement a few hours later when talking to detectives at the scene. Officer Bodell testified that he changed his story because he realized after the officers had arrived at the Daily Road location, from his bedroom window, all the persons at the scene appeared to be black. Therefore, when he realized that because of the lighting and the distance he could not be sure of the race or gender of those involved, he informed detectives that what he told the dispatcher might not have been accurate.
 {¶ 11} By his assignment of error, defendant contends that the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 12} The Ohio Supreme Court described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, supra.
 {¶ 14} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard
(Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 16} Defendant argues that the evidence to convict him of murder was insufficient and against the manifest weight of the evidence. It is defendant's position that all the testimony in this case must be analyzed in light of the one credible witness who saw the shooting — Officer Bodell. Defendant asserts that his testimony "is in stark contrast to the testimony of all the other witnesses leading one to surmise that Williams, Frasier, Winston and Davis are, at best, mistaken or, at worst, not telling the truth." (Appellant's Dec. 15, 2004 Brief, pg.2.) Defendant contends that the most plaintiff is able to show is that defendant was in the area of the shooting and argued with Neff that night, but not that defendant actually shot Neff. Specifically, defendant asserts that the testimony is inconsistent because Bodell places three to four people outside at the time of the shooting, and the other witnesses do not place that many people outside on the street at that time.
 {¶ 17} We find that the testimony and the evidence, when viewed in a light most favorable to the prosecution, as we are required to do, could convince the average mind of defendant's guilt beyond a reasonable doubt. Although defendant attacks most of the witnesses' credibility, an appellate court does not weigh credibility when considering an insufficiency of the evidence argument. State v. Coit, Franklin App. No. 02AP-475, 2002-Ohio-7356, citing Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69. Additionally, it is not proper to single out the testimony of one witness, Officer Bodell, as defendant has, to argue that the testimony of all the other witnesses is not believable. Essentially all of the witnesses have testified that defendant got out of his vehicle and got into an argument with Neff. Shots were heard and defendant returned to his vehicle and left the scene. Meanwhile, Neff, bleeding from a gunshot wound, entered the Colbridge residence where calls were placed to 911 and the persons in the residence waited for police and medics to arrive. None of the witnesses testified that anyone other than defendant was arguing with Neff. The testimony places defendant in front of the Colbridge residence consummating a drug deal, and there is testimony that after being shot, Neff stated, "They shot me," and "All I told them" — "told them was to take their shit down the road." (Tr. Vol. III, pg.289; Vol. II, pg.116.) Based on the evidence and the testimony of all the witnesses viewed in a light favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that defendant was indeed the person who shot Neff.
 {¶ 18} Similarly, we cannot say that the jury's verdict was against the manifest weight of the evidence. The basis for defendant's manifest weight argument is the witnesses' conflicting testimony. A conviction, however, is "not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Moore,
Montgomery App. No. 20005, 2004-Ohio-3398, quoting State v. Gilliam
(Aug. 12, 1998), Lorain App. No. 97CA006757. In this case, however, Officer Bodell's testimony is not necessarily at odds with the testimony of the other witnesses. According to Frasier, she was outside of her vehicle when defendant pulled out a gun. Thus, Frasier's testimony establishes that at least three people were outside when shots were fired. Officer Bodell testified that three to four people were outside arguing and then he heard two shots and saw people running and fleeing the scene. Officer Bodell admitted that due to the lighting conditions he could not be sure of the race or gender of those involved. Officer Bodell testified that he "was not certain that they were males. They ran pretty fast. They were larger individuals, but, no, I could not tell if they were all males." (Nov. 3, 2004 Tr., Vol. II, pg.45.) The jury had the testimony of numerous witnesses and was able to evaluate credibility. Based upon the testimony of Frasier, coupled with that of Bodell, Williams, Davis, Yates and Winston, the jury had ample evidence to believe that defendant purposely caused the death of Neff. Jackson,
supra; Sheppard, supra.
 {¶ 19} After carefully reviewing the trial court's record in its entirety, we conclude that there is nothing to indicate that the jury clearly lost its way or that any miscarriage of justice resulted. Consequently, we cannot say that defendant's conviction is against the manifest weight of the evidence.
 {¶ 20} For the foregoing reasons, defendant's assignment of error is overruled, and the judgment of the Franklin County Common Pleas Court is affirmed.
Judgment affirmed.
Sadler and Deshler, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.