OPINION
{¶ 1} Defendant-appellant, Daylan L. Caldwell ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas entered upon a jury verdict finding appellant guilty of one count of aggravated murder, with specification, a first degree felony in violation of R.C. 2903.01, one count of aggravated robbery, with specification, a first degree felony in violation of R.C. 2911.01, one count of conspiracy to commit aggravated robbery, with specification, a first degree felony in violation of R.C. 2911.01, and one count of tampering with evidence, a third degree felony in violation of R.C. 2921.02.
 {¶ 2} On April 26, 2006, appellant was sentenced to 20 years to life on the aggravated murder conviction, concurrent to a 5-year term on the merged counts of aggravated robbery and conspiracy to commit aggravated robbery, concurrent to a 2-year term for tampering with evidence, and consecutive to a 3-year term for use of a firearm. Appellant was awarded 228 days of jail time credit.
 {¶ 3} Appellant timely appealed and brings the following single assignment of error for our review:
 THE VERDICT IN THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} The charges in this case arose out of the shooting death of Clinton Andrix ("Andrix") that occurred on April 30, 2001, in a parking lot off of Morse Road in Franklin County, Ohio. The following scenario underlying the shooting is taken from the testimony provided at trial. On April 30, 2001, Creshella Bailey ("Creshella"), her boyfriend Kendrick Akins ("Akins"), her sister Natusha Bailey ("Natusha"), and Natusha's boyfriend, appellant, wanted to buy ten or twenty dollars worth of marijuana. Creshella and Akins both worked at Fed-Ex with Kevin Fletcher ("Fletcher"). Both Creshella and Akins were aware that Fletcher knew a "white boy" that would sell them marijuana. (Tr. 111, 222.) Andrix was that individual. While the girls were discussing the situation, and the fact of having no money with which to make the purchase, Akins and appellant concocted a scheme to steal the marijuana. According to Akins, the plan was to "snatch the weed." (Id. at 222.) Akins said he would "run to the car, scare them, grab the weed." (Id.) Akins thought, "because he was a white boy, he would be scared. [Akins] could just run up to him and scare him and snatch the weed from him and be gone." (Id. at 222-223.) Akins testified that originally it was just going to be Creshella, Natusha, Akins, and appellant, but then appellant called his friends to assist. Appellant told Natusha that he needed the 0.22 caliber gun she had recently purchased in March of 2001, and that she needed to drive her car to the exchange.
 {¶ 5} During this time, 20-year old Andrix, and his friend Jeff Swartz ("Swartz") went to the apartment of Steve Mountjoy ("Mountjoy"), who lived below Fletcher. While at Mountjoy's, a call from Creshella came in for Fletcher. According to Swartz, Andrix would get small amounts of marijuana for personal use for close friends from an individual known as Quan. After getting Creshella's phone call, an agreement was made for the sale of three pounds of marijuana, which according to Swartz was an uncharacteristically high amount for Andrix to be involved with. The exchange was to take place off Morse Road in the Northland Mall parking lot.
 {¶ 6} Natusha drove her station wagon, with Creshella and Akins, to the exchange location, and appellant rode in a sport utility vehicle ("SUV") with Delvon Bush ("Bush"), the co-defendant in this case, and also known as "Popeye." Andrix and Natusha arrived at the parking lot near the same time. Andrix was driving his car, Swartz was seated in the front passenger's seat, and Fletcher was seated behind Swartz. Because of a relatively high amount of traffic and poor lighting, they decided to move to the parking lot across Morse Road near a Firestone. Quan was parked in a green SUV a few parking aisles behind Andrix, but Akins and his companions were unaware of Quan's presence. Akins went to Andrix' side of the car and asked, "where the weed was." (Id. at 234.) In response, Andrix asked where the money was. Several exchanges of this nature occurred and Andrix called Quan on his Nextel phone with two-way radio capabilities. Andrix told Quan that Akins wanted to see the marijuana, and Quan said no, not until he showed the money. Akins, realizing there was no marijuana in Andrix' car, turned around to leave and go back to Natusha's car. As he turned to leave, appellant and Bush were approaching, and Akins told them "he don't look like he got no weed." (Id. at 236.) According to Swartz, at this time, one of the men said "get the fuck out of the car," and then fired at Andrix, striking him in the chest. (Id. at 355.)
 {¶ 7} Andrix accelerated out of the parking lot, but passed out in an intersection. Swartz pulled him into the backseat, and started driving towards Riverside Hospital. Upon seeing a fire station at Morse and Karl Roads, Swartz did a u-turn and pulled into the fire station. The paramedics noticed a small entrance wound to Andrix' chest and began intubating him to assist his agonal breathing. In a matter of minutes, Andrix was transported to the hospital, but on the way, Andrix lost pulse and was not able to be resuscitated. An autopsy revealed that Andrix died of an indeterminate range gunshot wound to the chest, and a 0.22 caliber projectile was recovered from his body.
 {¶ 8} After the shooting, Creshella, Natusha, and Akins returned to Natusha's apartment and proceeded to talk about the incident. They were ultimately successful in obtaining some marijuana from another source. Natusha did not see appellant again until the next day when she saw him with Bush. Appellant told her that her gun had been the murder weapon and that he had gotten rid of it. According to Natusha, appellant and Bush were talking and laughing about what happened the prior evening. Natusha testified that appellant threatened her that if she told, he would kill her.
 {¶ 9} Thereafter, Natusha filed a false police report stating that her gun had been stolen. Though they were interviewed by homicide detectives of the Columbus Police Department in 2001, both Akins and Natusha lied and said they knew nothing of the events that transpired on April 30, 2001. In 2005, after being asked to look into the matter, homicide detective James McCoskey of the Columbus Police Department reviewed the investigation. Detective McCoskey entered the nickname "Popeye" into a data bank and found it to be affiliated with two persons of interest to the Columbus Police, one being too old to be involved in this case, the other being Delvon Bush. Detective McCoskey interviewed Natusha on June 29, 2005 for about 15 minutes, wherein she appeared reluctant to talk to him. However, 20-30 minutes after he left, Natusha called Detective McCoskey and said she wanted to tell "the truth" about what had happened that night. (Id. at 139.)
 {¶ 10} On September 16, 2005, appellant and Bush were indicted as co-defendants for aggravated murder, aggravated robbery, conspiracy to commit aggravated robbery, and tampering with evidence. Appellant was also charged with having a weapon while under a disability ("WUD"). The WUD charge was tried to the bench and the court found appellant not guilty of said charge. Appellant and Bush were tried together on the remaining charges in a jury trial that commenced on April 18, 2006. On April 24, 2006, both defendants were found guilty of aggravated murder, aggravated robbery, conspiracy to commit aggravated robbery, all with firearm specifications, and tampering with evidence.
 {¶ 11} In his single assignment of error, appellant contends that his convictions must be reversed as against the manifest weight of the evidence. Appellant does not challenge the sufficiency of the evidence or argue that appellee failed to produce evidence as to any element of the offenses of which he was convicted. The basis for appellant's manifest weight argument is the witnesses' credibility. According to appellant, Natusha and Akins "have absolutely no credibility," and therefore, "there is no legal basis to support a conviction." (Brief at 12.) Appellant also asserts that Natusha, Akins, and Swartz gave "vastly different accounts of the incident." (Id. at 13.)
 {¶ 12} "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 13} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v.Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v.Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 14} Here, appellant asserts that Natusha's testimony lacks credibility because she filed a false police report, lied to the police on two occasions about what happened, played a vital role in the set-up of the transaction, supplied the murder weapon, and drove one of the cars at the scene. Similarly, appellant asserts that Akins' testimony lacks credibility because he also lied to the police about what happened that night, and he was promised a reduction in the sentences for which he was currently serving time if he cooperated in the prosecution of appellant and Bush. However, all of the information, including appellant's theory that these witnesses were testifying in order to cover up their own involvement in the murder, was presented to, and rejected by the jury. As previously stated, the weight to be given to the evidence, and the credibility of the witnesses are issues primarily for the trier of fact. DeHass, supra.
 {¶ 15} Additionally, while there were some discrepancies in the testimony of the witnesses, much of their testimony was consistent in significant areas. Both Akins and Natusha testified that Akins approached Andrix' car to discuss the marijuana. Both testified that as Akins was turning to leave, Bush and appellant approached Andrix' car. Both also identified Bush as the shooter. This testimony was corroborated by Swartz who testified that a black male went to Andrix' side of the car and Andrix and the individual had a verbal exchange regarding the marijuana. Swartz described that additional black males approached the car, as the first individual stepped back. According to Swartz, two of the men had guns, and one of them fired at Andrix. When asked if he could say for sure that the first individual that walked up to the car, which according to Akins and Natusha was Akins, was not the shooter, Swartz replied, "yes." (Tr. at 357.) Swartz testified that he was "about a hundred percent sure" that the shooter was left-handed. (Id. at 388.) Detective McCoskey testified that Bush is left-handed.
 {¶ 16} The jury had the testimony of numerous witnesses and was able to evaluate credibility. Based upon the testimony of the witnesses, the jury had ample evidence to believe that appellant was guilty of the offenses of which he was convicted. Jackson, supra; Sheppard, supra. A conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. State v.Rippey, Franklin App. No. 04AP-960, 2005-Ohio-2639, discretionary appeal not allowed by 106 Ohio St.3d 1530, 2005-Ohio-5146.
 {¶ 17} After careful review of the record before us, we cannot conclude that the evidence weighs heavily against the convictions, or that the jury clearly lost its way. Consequently, we cannot say that appellant's conviction is against the manifest weight of the evidence.
 {¶ 18} For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
KLATT, P.J., and FRENCH, J., concur.