OPINION
{¶ 1} Defendant-appellant, Andrea Weller ("appellant"), appeals from a judgment of conviction and sentence by the Franklin County Court of Common Pleas after a bench trial in which appellant was found guilty of a total of 19 counts of passing bad checks in violation of R.C. 2913.11, one count being a misdemeanor of the first degree, and the remaining counts being felonies of the fifth degree.
 {¶ 2} The charges against appellant arose from a series of transactions occurring between March 18 and July 18, 2005. The following factual scenario was adduced at *Page 2 
trial. In February 2005, appellant began renting a mailbox at a UPS store in the name of appellant and Synergy Global. The manager of the UPS store, Greg McGill, was authorized to accept mail for appellant, Synergy Global, Crave Life and Executec, but was instructed not to accept certified mail on behalf of any of the aforementioned. At that address, mail was also delivered to Barbara Bringman, appellant's mother, who had a web domain of synergyglobalteam.com created and billed to her.
 {¶ 3} Mandi Riebel was working at Molly Maid when appellant offered her a job with Synergy Global in February 2005. According to Ms. Riebel, appellant was to pay her $900 every two weeks and the salary was to be directly deposited into Ms. Riebel's account at Charter One bank that was opened at appellant's request. When her first paycheck was due, appellant called Ms. Riebel for information so that the check could be deposited into Ms. Riebel's account. A few days later, Ms. Riebel learned the check had bounced. Thereafter, a check for $900 was reissued and a check for $767 was issued. Via email communications with various persons purporting to be representatives for Synergy Global, Ms. Riebel was informed that there would be wire transfers of the money, but none occurred. Ms. Riebel received all three checks back from her bank along with a note indicating there were insufficient funds in the account. Thereafter, Ms. Riebel contacted the Columbus Police Department.
 {¶ 4} Shaundretta Boykins, a branch manager at FirstMerit Bank, explained that an account for appellant, doing business as ("dba"), Synergy Global, had been opened on March 22, 2005. Appellant was the only approved signer on the account. However, the account was "charged off ten days later on April 1, 2005, meaning that the account was closed due to a determination that there was fraud on the account. From the date it was *Page 3 
opened, until March 31, 2005, there were eight deposits made totaling $10,376.59 and 16 withdrawals made totaling $13,817.19.
 {¶ 5} Jennifer Weaver, a fraud investigator for Sky Bank, described that she began investigating appellant in 2005 for suspected check-kiting activity, which occurs when checks are being returned because a person writes checks to another one of the person's own accounts without sufficient funds. According to Ms. Weaver, appellant opened a business account with Sky Bank on June 17, 2005, and was the sole signer on the account. The business listed on the account was Synergy Global, and appellant deposited $269 into the account. On the same day, appellant opened a personal account for herself and Synergy Global. Approximately two months later, both accounts were closed on August 25, 2005 because they had previously been frozen by Sky Bank due to returned deposits on the account. All the checks deposited in the accounts at Sky Bank were from the FirstMerit Bank account of appellant dba Synergy Global, and all the checks were returned stating that the account from which the checks were written was closed, as that account had been closed on April 1, 2005. As a result of the checks not being honored, Sky Bank suffered a loss of $14,315.46.
 {¶ 6} Cheryl Inks, a district operations manager at US Bank in Columbus, Ohio, explained that appellant opened a bank account in the name of herself and Synergy Global. The account was owned solely by appellant and set up as a sole proprietorship account. Between March 1 and March 21, 2005, the account fluctuated daily between positive and negative balances. After March 21, 2005, however, the account never retained a positive balance, and was written off on May 6, 2005, because it had been overdrawn for such an extended period of time. *Page 4 
 {¶ 7} Appellant testified on her own behalf and stated she hired Ms. Riebel to be a preschool director. Appellant admitted that she wrote and deposited all of the checks at issue, however, she stated she did not know that any of the checks would be dishonored. On cross-examination, appellant also admitted she had been previously convicted of numerous counts of passing bad checks in several counties in Ohio.
 {¶ 8} On September 30, 2005, the Franklin County Grand Jury indicted appellant in case No. 05CR-6613, on one count of forgery, one count of theft, and three felony counts of passing bad checks. On January 11, 2006, appellant was indicted in case No. 06CR-156 on one misdemeanor count and seven felony counts of passing bad checks, one count of forgery and one count of theft. On September 13, 2006, appellant was indicted in case No. 06CR-6911 on eight felony counts of passing bad checks and one count of theft. The cases were consolidated for trial. On October 30, 2006, appellant waived her right to a jury trial via written jury waivers.
 {¶ 9} The matter proceeded to trial on February 27, 2007. Plaintiff-appellee, State of Ohio ("appellee"), moved for, and was granted, dismissal of the forgery and theft counts from case. No. 05CR-6613. At the conclusion of the trial, the trial court found appellant guilty of all the passing bad check counts, and not guilty on all the remaining forgery and theft counts. Appellant was sentenced to six months on each count of passing bad checks to run concurrent under each case number, but with each case number to run consecutive to each other, for a total of 18 months' imprisonment.
 {¶ 10} This appeal followed, and appellant brings four assignments of error for our review: *Page 5 
 First Assignment of Error
 Appellant's convictions for [passing bad checks] are not supported by sufficient evidence.
 Second Assignment of Error
 Appellant's convictions for [passing bad checks] are against the manifest weight of the evidence.
 Third Assignment of Error
 Retrospective application of the holding of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470 violated the Due Process protections of the Fifth and Fourteenth Amendments and the Ex Post Facto clause of Article I, Section 10 of the United States Constitution.
 Fourth Assignment of Error
 The Appellant was deprived of the fair trial guaranteed by the United States and Ohio Constitutions due to the introduction of irrelevant and inflammatory evidence, and the misconduct of the prosecution in closing argument.
 {¶ 11} In her first and second assignments of error, appellant challenges both the sufficiency and the weight of the evidence pertaining to her convictions.[1] Because these two assignments of error are interrelated, we will address them together.
 {¶ 12} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant *Page 6 
inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982),70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484;Jenks, supra.
 {¶ 14} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers *Page 7 
the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v.Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v.Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 16} Appellant was convicted of passing bad checks in violation of R.C. 2913.11, which provides in relevant part: *Page 8 
 (B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument.
 (C) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
 (1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;
 (2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.
 {¶ 17} R.C. 2901.22(A) states that "a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 18} Appellant summarily argues there is no evidence of purposeful conduct on the part of appellant, and that there is no evidence that appellant knew the checks would be dishonored. According to appellant, appellee provided sufficient evidence only to establish that appellant was caught up in a failed business venture. Appellant, however, ignores the remaining circumstantial evidence provided by the testimony of appellee's witnesses. The Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone."State v. Franklin (1991), 62 Ohio St.3d 118, 124, citing State v.Nicely (1988), 39 Ohio St.3d 147, 154-155. In fact, circumstantial *Page 9 
evidence may "`be more certain, satisfying and persuasive than direct evidence.'" State v. Ballew (1996), 76 Ohio St.3d 244, 249, quotingState v. Lott (1990), 51 Ohio St.3d 160, 167, quoting Michalic v.Cleveland Tankers, Inc. (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11.
 {¶ 19} Ms. Riebel began working for appellant in February 2005, and was employed to set up appointments with preschools and kindergartens for a program called "Bunny Ballet." Appellant agreed to pay Ms. Riebel $900 every two weeks for her efforts, and the money was to be directly deposited into Ms. Riebel's account at Charter One Bank, which was opened at appellant's request. The first check, dated March 9, 2005, was written for $900 from Synergy Global and appellant. Several days later, Ms. Riebel found out the check had bounced. After being contacted by Ms. Riebel, appellant issued a second check for $900, and then a third check for $767. Both of these checks were returned to Ms. Riebel from her bank. Ms. Riebel testified that she tried to resolve the matter with purported representatives of Synergy Global via email communications, but to no avail.
 {¶ 20} The transcript also includes the testimony of Ms. Boykins from FirstMerit Bank, who testified appellant opened account number 5116000161 in the name of herself, dba Synergy Global. In the time the account was opened on March 22, 2005, until it was closed on April 1, 2005, appellant made eight deposits totaling $10,376.59, and 16 withdrawals totaling $13,817.19. The account was closed because it was "charged off," meaning that it was determined there was fraud on the account. Ms. Boykins testified to the details of each transaction made, including counterchecks issued to appellant, and checks written from the FirstMerit account to appellant. Additionally, Ms. *Page 10 
Boykins described each check number presented by appellant from US Bank account number 130105119049, made payable to Synergy Global and signed by appellant. While most of the money was to be deposited, some amounts were retained by appellant. Also drawn on the US Bank account were three checks, one payable to Mandi Riebel, one payable to Barbara Bringman, and one payable to Sue Pasicka, with all three checks presented for deposit into the FirstMerit account. Several of the checks were marked "held funds," meaning there was no money available in the US Bank account to cover the deposits. According to Ms. Boykins, none of the checks presented to the FirstMerit Bank by appellant from the US Bank account were honored because there were insufficient funds to cover the checks.
 {¶ 21} Ms. Weaver, a fraud investigator for Sky Bank, testified that on June 17, 2005, appellant opened two accounts. Appellant opened a business account with appellant being the sole signer on the account and Synergy Global being listed as the business on the account. Appellant also opened a personal account for herself and Synergy Global. The business account was account number 4605175547, and the personal account was account number 4605175660. Both accounts were closed on August 25, 2005, because they had been previously frozen on or about July 21, 2005, by Sky Bank due to returned deposits on the account. Ms. Weaver testified regarding eight specific check numbers, which included a series of checks from the FirstMerit account in the name of appellant, dba Synergy Global. Ms. Weaver testified to each specific transaction, explaining that the money was deposited, and appellant received some of the cash back from the deposits. According to Ms. Weaver, all of the checks presented by appellant drawn from the FirstMerit account were returned, stating the account was *Page 11 
closed. As a result of the transactions, Sky Bank suffered a loss of $14,315.46, and the majority of the money was lost due to cash withdrawals on the account.
 {¶ 22} Ms. Inks, a district operations manager with US Bank testified that appellant opened an account in the name of herself and Synergy Global. The account was solely owned by appellant and was set up as a sole proprietorship. The account was account number 13010511949. Between March 1 and March 31, 2005, the account fluctuated between holding positive and negative balances, but after March 24, 2005, the account never retained a positive balance. The US Bank account was "charged off" on May 6, 2005, because the account had been overdrawn for an extended period of time. The total loss to US Bank was $343.57. Ms. Inks testified regarding each specific transaction, including checks presented by appellant written on a Champaign Bank account of appellant, dba Synergy Global made payable to Synergy Global for various amounts. Appellant wrote checks from the US Bank account to various businesses, including FedEx, Kinko's, Staples, and the Columbus Dispatch. Further, Ms. Inks identified the checks made payable to Synergy Global from the US Bank account and presented for deposit to the FirstMerit Bank account. The only deposits made to the US Bank account were from a Champaign Bank account and a Charter One Bank account. Two checks were stamped "held funds" because the money was not available.
 {¶ 23} We find that based on the evidence and testimony of all the witnesses, viewed in a light most favorable to the prosecution, as is required, a rational trier of fact could have found beyond a reasonable doubt that appellant was indeed guilty of the offenses for which she was convicted. Thus, we find the record contains sufficient evidence to support appellant's convictions. *Page 12 
 {¶ 24} Similarly, we do not find that appellant's convictions are against the manifest weight of the evidence. In addition to the above-described testimony, appellant testified on her own behalf. Appellant testified that she was a regional director for Synergy Global from April 2003 to July 26, 2006. Appellant met Ms. Riebel through Ms. Riebel's employment at Molly Maid. Appellant hired Ms. Riebel in February 2005. According to appellant, Ms. Riebel worked for Synergy Global for about a month, but failed to complete her tasks on time. With respect to the checks written to Ms. Rieble, appellant explained she was instructed "from corporate" to issue the checks. (Tr. at 432.) After issuing the first check, Ms. Riebel told appellant that it bounced, but appellant stated she never received any notification from the bank that any of the checks had bounced.
 {¶ 25} Appellant explained that she set up the Champaign Bank account to handle payroll for Synergy Global, but when she was unable to work out payroll payments with them, she transferred the money to US Bank. Appellant went on to explain that she needed a debit card for travel purposes, but US Bank would not permit a debit card for her; therefore, she opened the account at FirstMerit Bank. When a debit card was not issued by FirstMerit Bank, appellant opened the account at Sky Bank. Appellant testified that she did not know the FirstMerit Bank account had been closed within 11 days of its opening until the account at Sky Bank had been opened. Appellant stated she had no contact with FirstMerit Bank after the account was closed on April 1, 2005, but she was unable to explain why she had written checks on that account in July 2005.
 {¶ 26} Appellant testified she never personally received returned checks from any of the banks where checks had bounced. Appellant also stated she received no value or benefit from any of the transactions at issue, nor did she intend to cause anybody any *Page 13 
difficulty or detriment. Appellant admitted on cross-examination that she had been previously convicted of numerous counts of passing bad checks in several Ohio counties.
 {¶ 27} Appellant does not deny that she made all of the deposits and withdrawals in question. She maintains, however, that the trier of fact should have inferred that she did not have the requisite intent. However, the trier of fact was entitled to infer as it did, as it was in the ideal position to weigh the evidence and judge the various witnesses' credibility. See, DeHass, supra. While this case turns on circumstantial evidence, as we indicated previously, the Supreme Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." Franklin, supra. In fact, circumstantial evidence may "`be more certain, satisfying and persuasive than direct evidence.'" Ballew, at 249, quoting Lott, at 167. Furthermore, a conviction is not against the manifest weight of the evidence simply because the trier of fact chose to believe the prosecution's witnesses and chose not to believe appellant. State v. Rippey, Franklin App. No. 04AP-960, 2005-Ohio-2639.
 {¶ 28} Based upon all the evidence in this case, we find that a trier of fact could reasonably infer purpose and knowledge on appellant's part. Thus, we cannot conclude that the trial court lost its way and created a manifest miscarriage of justice when it found appellant guilty of the charges for passing bad checks. Therefore, we find that appellant's convictions are not against the manifest weight of the evidence.
 {¶ 29} For the foregoing reasons, appellant's first and second assignments of error are overruled.
 {¶ 30} In her third assignment of error, appellant contends the trial court erred in imposing consecutive sentences. Specifically, appellant asserts the retroactive *Page 14 
application of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, certiorari denied by (2006), 127 S.Ct. 442, to her sentence violates the Due Process and Ex Post Facto Clauses of the United States Constitution. Therefore, appellant requests that this court remand this matter to the trial court so that appellant can be sentenced to statutory minimum and concurrent terms.
 {¶ 31} In Foster, the Supreme Court of Ohio held that, under the United States Supreme Court's decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, portions of Ohio's statutory sentencing scheme were unconstitutional. Specifically, the court found that R.C.2929.14(B), which required that express judicial findings be made on the record to overcome a presumption in favor of minimum and concurrent terms, was violative of a criminal defendant's right to have all elements of his offense tried to and passed upon by a jury.
 {¶ 32} Appellant argues that the remedy adopted by the Supreme Court of Ohio in Foster, that is, severance of the unconstitutional portions of R.C. 2929.14(B), operates as an ex post facto law because it inflicts greater punishment upon her than she would have facedpre-Foster, when the presumption of a minimum sentence would have applied. In addition, appellant argues that the Supreme Court should only have severed the mandatory judicial fact-finding aspects of R.C.2929.14, and left the presumption of a minimum sentence in place.
 {¶ 33} Neither argument is well-taken. We are bound to apply the precedent set by this state's highest court in Foster as it is written, and this court has repeatedly reaffirmed as much. State v.Alexander, Franklin App. No. 06AP-501, 2006-Ohio-6375; *Page 15 State v. Fout, Franklin App. No. 06AP-664, 2007-Ohio-619; State v.Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899. "Appellant may not, therefore, argue before this court that we must reshape the expressly-stated statutory severance remedy defined by the Supreme Court of Ohio in Foster, either with respect to maintenance of a presumption of minimum sentence or precluding retroactive application of the judicially modified sentencing statement." State v. Kendall, Franklin App. No. 06AP-1139, 2007-Ohio-5656, at ¶ 13.
 {¶ 34} Accordingly, appellant's third assignment of error is overruled.
 {¶ 35} In her final assignment of error, appellant contends she was denied a fair trial as a result of prosecutorial misconduct. Specifically, appellant points to two instances during the prosecution's cross-examination of her where the prosecution was questioning appellant about her relationship with two persons, namely, Doug Litteral and Bill Worley. The following two exchanges occurred:
 [The State]: Bill Worley?
 [Appellant]: He is Sue Pasicka's brother, and he did our Web site setup.
 [The State]: Is it surprising to you that when I spoke with him on December the 28th, he said he met you through personals? He helped you with the Web page, but he only got paid once and never heard from you again?
(Tr at. 510.)
 [The State]: Then there's a Doug Litteral.
 * * *
 [The State]: So you had ample discussions with him?
 [Appellant]: He was a trainer for us, yes. *Page 16 
 [The State]: So you'd be surprised if I told you when I talked to him on the phone December 28th of 2006, he said he knew you from taking you to homecoming when you were 16. He never talked to you about this. He only talked with your mother, Barb Bringman. That would surprise you if he had told you.
(Tr. at 511-512.)
 {¶ 36} There was no objection to the above testimony at trial; therefore, appellant has waived all but plain error. State v.Keenan (1998), 81 Ohio St.3d 133; State v. Santiago, Franklin App. No. 02AP-1094, 2003-Ohio-2877. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v. Moreland (1990), 50 Ohio St.3d 58. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, syllabus paragraph three.
 {¶ 37} The test for prosecutorial misconduct is whether remarks were improper, and if so, whether those remarks prejudicially affected substantial rights of the accused. State v. Smith (1984),14 Ohio St.3d 13, 14. The touchstone of the analysis is the fairness of the trial and not the culpability of the prosecutor. State v. Mayes, Franklin App. No. 03AP-1154, 2005-Ohio-1769, at ¶ 28, citing Smith v. Phillips (1982),455 U.S. 209, 102 S.Ct. 940.
 {¶ 38} Initially, we note that with all the evidence presented, under a plain error analysis, we could not find that the prosecutor's conduct prejudicially affected appellant's substantial rights. Moreover, this matter was tried to the bench. "Under Ohio law, `the usual presumption is that in a bench trial in a criminal case the trial court considers only *Page 17 
the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" State v.Copley, Franklin App. No. 04AP-1128, 2006-Ohio-2737, discretionary appeal not allowed by 111 Ohio St.3d 1432, 2006-Ohio-5351, at ¶ 27, quoting State v. Klempa, Belmont App. No. 01 BA 63, 2003-Ohio-3482, at ¶ 15, citing State v. Post (1987), 32 Ohio St.3d 380, 384.
 {¶ 39} Thus, even assuming, arguendo, that the comments complained of amounted to plain error, appellant would still be required to rebut the presumption outlined in Copley. Here, there is nothing, not even an allegation, to suggest the trial court considered anything but relevant, material, and competent evidence in arriving at its judgment.
 {¶ 40} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 41} For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
SADLER, P.J., and TYACK, J., concur.
[1] Evidence was introduced regarding the forgery and theft counts; however, because these counts resulted in not guilty verdicts, the evidence pertaining to them will not be discussed. *Page 1