OPINION
{¶ 1} Defendant-appellant, Bryant L. Sebastain ("appellant"), appeals from the judgment of conviction of the Franklin County Court of Common Pleas entered upon a jury verdict finding appellant guilty of murder with firearm specification, an unspecified felony, in violation of R.C. 2903.02.
 {¶ 2} The charges in this case arise out of the shooting death of Melvin Ruffin ("Ruffin"). The facts surrounding Ruffin's death were adduced at trial as follows. On February 26, 2007, at approximately 5:48 p.m., Columbus Police Officer Scott F. Bowman *Page 2 
responded to a 9-1-1 call of a shooting victim in the area of the intersection of Blake and Joyce Avenues in Columbus, Ohio. Ruffin's body was discovered at the entrance to a construction site at the Galilee Baptist Church. Medics arrived and Ruffin was pronounced dead at the scene.
 {¶ 3} Ruffin's mother, Ladawnya Ruffin, testified she last saw her son on February 26, 2007, at approximately 1:15 p.m., when she left for work. Ruffin was scheduled to go to the library for tutoring that day from 3 to 5 p.m. Trevvaun Hunter ("Hunter") testified he was with Ruffin on this date until Ruffin left for tutoring at 3 p.m. Hunter then spent his time with Marcus Boyd ("Boyd") at the Kenworth Square Apartments. After the tutoring session, Ruffin saw Patrick Sumling ("Sumling") and appellant, also known as "B" or "Little B." Sumling testified Ruffin asked where his aunt could buy some marijuana later that day, and then Ruffin walked away. After the brief interaction, appellant used Sumling's cell phone to call Boyd. After getting the call from Sumling's phone, Boyd told Hunter "to come on, we got to go." (Tr. at 143.) Hunter and Boyd headed in the direction of Blake Avenue, but Hunter testified he did not know exactly where they were going, nor did he know they were going to meet Ruffin. Hunter also explained he did not know Boyd had a gun until Boyd pulled a 0.22 caliber revolver out of his pocket as the two left the apartment.
 {¶ 4} Sumling and appellant continued walking behind Ruffin toward Blake and Joyce Avenues. Sumling and appellant reached Ruffin, Boyd, Hunter, and Durrell Jones ("Jones"), near an alley by the Galilee Baptist Church. Apparently, Boyd had been shot a few months prior and accused Ruffin of being the shooter. When they saw Ruffin, Boyd pulled the gun and asked Ruffin about the prior shooting, but Ruffin denied being *Page 3 
involved. Boyd, who had been aiming the gun at Ruffin's face, then hit Ruffin in the face with the gun. According to Hunter, the gun got passed to Jones, then appellant grabbed the gun, said something to Ruffin, and shot Ruffin in the leg. According to Sumling, after Boyd hit Ruffin in the face with the gun, Ruffin said something like "oh, that is messed up." Id. at 242. Sumling further explained that appellant grabbed the gun and said, "I am going to show you how real niggers get" and shot Ruffin in the leg. Id. at 242-243. Ruffin asked appellant why he did that, but, according to the testimony, appellant did not answer. Appellant then shot Ruffin one or two more times in the chest. Appellant, Sumling, Jones, and Boyd ran to Sumling's house. Ruffin ran for a short distance in the direction of Hunter's home before collapsing on the street. Hunter, who was following Ruffin, pulled Ruffin from the street and put his coat over Ruffin. Hunter then left to get Nicole to take Ruffin to the hospital.
 {¶ 5} Once at Sumling's house, Boyd had the gun and appellant said, "why you walking around with the gun? You all nigger stupid." Id. at 247. Appellant then called his baby's mother, and she picked him up. When they heard on the news that Ruffin was dead, Boyd tried to bury the gun in the backyard, but then gave it to a friend, Martay Cook, to throw away.
 {¶ 6} The police and medics arrived at the scene. Though Hunter was present when police arrived, he did not talk to them because he was "too angry." Id. at 166. However, Hunter testified he told his mother either that night or the next morning what had happened. Hunter's mother testified that Hunter told her what happened that evening and that appellant shot Ruffin. Ms. Ruffin told police that someone called her and told her "Little B" shot Ruffin. *Page 4 
 {¶ 7} Though he talked to detectives on March 16, 2007, Hunter did not give appellant's name because he didn't "want to be no snitch." Id. at 167. Hunter also did not tell detectives he had been with Boyd or that Boyd struck Ruffin with the gun. On April 12, 2007, however, Hunter gave police the full rendition of what happened and selected appellant out of a photo array.
 {¶ 8} Appellant left town and was arrested in Hampton, Virginia on May 22, 2007. Sumling testified he got a letter from appellant while appellant was incarcerated. Though the letter was never recovered, Sumling testified the letter stated, "I don't want to see my niggas switch sides on me, ride on me." Id. at 248. Sumling's older brother Ricky also got two letters from appellant while appellant was incarcerated. According to Ricky Sumling, in the second letter, appellant stated "he fucked up; he didn't mean to do that to the boy." Id. at 285. Appellant also stated in the letter that, "they ain't have nothing on him because they don't have the murder weapon." Id.
 {¶ 9} The gun was never recovered but it was determined that the two bullets removed from Ruffin's body were 0.22 caliber and were fired from the same gun. The coroner testified Ruffin had abrasions and contusions on his face that could be consistent with getting hit with a gun. Id. at 340. Ruffin also had a gunshot wound to his leg, and a fatal gunshot wound to his chest.
 {¶ 10} On June 7, 2007, the Franklin County Grand Jury indicted appellant on one count of aggravated murder and one count of kidnapping, both with firearm specifications. A jury trial began on March 31, 2008. On April 7, 2008, the jury returned a verdict of not guilty of kidnapping and not guilty of aggravated murder, but guilty of the lesser-included offense of murder with firearm specification. On April 10, 2008, appellant was sentenced *Page 5 
to 15 years to life on the murder count, consecutive to a three-year term for the firearm specification. Appellant was awarded 306 days of jail-time credit.
 {¶ 11} This appeal followed and appellant brings the following assignment of error for our review: "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 12} In his single assignment of error, appellant contends his conviction must be reversed as against the manifest weight of the evidence. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." (Citation omitted.) State v.Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 13} A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale *Page 6 
is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v.Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v.Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 14} The basis for appellant's manifest-weight argument is essentially the witnesses' credibility. According to appellant, the defense theory at trial was that Boyd, not appellant, had a "beef" with Ruffin, and, therefore, it was Boyd who shot Ruffin. Also, appellant contends there was testimony appellant agreed to sell marijuana to Ruffin and appellant had no motive to kill one of his own customers. Additionally, appellant asserts the testimony of Hunter and the Sumling brothers is suspect as Hunter gave conflicting statements to police, and the Sumlings each had something to gain by testifying.
 {¶ 15} All of this information, however, including appellant's theory that Boyd was the shooter, was presented to, and rejected by, the jury. Additionally, while there were some discrepancies in the testimony, much of the testimony was consistent in significant areas. Both Hunter and Sumling testified they watched appellant grab the gun and shoot Ruffin at least twice. Hunter admitted at trial he failed to initially give police the full story *Page 7 
of events, and Sumling testified he hoped the prosecutors would tell his sentencing judge about his testimony. The jury had the opportunity to hear the direct and extensive cross-examination of these witnesses and to determine their credibility. As previously stated, the weight to be given to the evidence and the credibility of the witnesses are issues primarily for the trier of fact. DeHass, supra. Moreover, though appellant advanced the theory that Boyd was the shooter, there is no evidence in the record to support such theory. In contrast, there is testimony from two eyewitnesses conveying similar accounts of what happened and describing how appellant shot Ruffin. Though the jury rejected the defense theory that Boyd was the shooter, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. State v. Rippey, Franklin App. No. 04AP-960, 2005-Ohio-2639, discretionary appeal not allowed by106 Ohio St.3d 1530, 2005-Ohio-5146.
 {¶ 16} After careful review of the record before us, we cannot conclude that the evidence weighs heavily against the conviction, or that the jury clearly lost its way. Consequently, we cannot say that appellant's conviction is against the manifest weight of the evidence.
 {¶ 17} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 FRENCH, P.J., and KLATT, J., concur. *Page 1